Judy M. LENHART, Plaintiff-Appellant,

v.

Earl H. RICH, Defendant,
National Mutual Insurance Company,
Garnishee-Respondent.

No. 24053.

Kansas City Court of Appeals.
Missouri.
Dec. 7, 1964.

Richard W. Mason, St. Joseph, for appellant.

Richard E. Martin, Hugh A. Miner, St. Joseph, for respondent.

MAUGHMER, Commissioner.

This is a garnishment proceeding under which plaintiff Judy M. Lenhart seeks to collect her judgment against defendant Earl H. Rich from the respondent-garnishee, National Mutual Insurance Company. The trial court entered judgment for the insurer and plaintiff has appealed.

We summarize certain facts which were stipulated and undisputed. On August 4, 1962, an automobile owned by one Harry Rich and being operated by his son the defendant Earl H. Rich, collided with an automobile being driven by the plaintiff. On the date of the accident liability insurance policy number CA 33911, covering the Rich automobile and with Harry Rich, owner and father of defendant Earl H. Rich, as the named insured, was in full force and effect. The policy contains the following pertinent provisions:

"18. Assistance and Cooperation of the Insured—* * *. The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the at-

tendance of witnesses and in the conduct of suits".

"Conditions

"7. Action Against Company—* * No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, * *".

It is agreed here and it is generally understood that the word "insured" or "named insured" as used in the policy includes any person using the automobile with the permission of the person designated by name as the named insured in the policy. The company in addition to assuming liability also agreed to defend any suits against the "insured".

On September 28, 1962, the plaintiff Judy M. Lenhart filed in the Circuit Court of Buchanan County, Missouri, a suit against Earl H. Rich to recover damages for injuries allegedly sustained by her in the collision of August 4th. In response to that suit the National Mutual Insurance Company (present garnishee) appeared by its attorneys Miner and Martin of St. Joseph, Missouri, filed answer, undertook the defense and stipulated that Earl H. Rich was at the time of the accident operating the automobile with the permission of his father Harry Rich and was an "insured" under the terms of the policy. The attorneys for the company interviewed Earl H. Rich and Harry Rich, procured a copy of the police report of the accident, took the deposition of plaintiff, personally interviewed the police officers who had investigated the accident, interviewed one Marvin Morse, an eyewitness, and conducted negotiations regarding possible settlement and a trial setting.

March 11, 1963, was ultimately fixed as a trial date. It appears from the testimony of Mr. Richard E. Martin, one of garnishee's attorneys, and from the testimony of Harry Rich that Earl H. Rich had for many years lived most of the time in the domiciliary wards of the Veterans Administration Facility at Wadsworth, Kansas—70 miles dis-

tant from St. Joseph, the transportation fare by bus thereto being $1.70. For a further description of defendant Earl H. Rich, his life habits and activities, we quote from the testimony of his father, Harry Rich:

"Q. Where does Earl reside when he is in St. Joseph? Where does he live? A. Stays with me part of the time.

"Q. At other times where does he stay? A. Buchanan County jail and Wadsworth.

"Q. At the Domiciliary in Wadsworth? A. Yeah.

"Q. He is a veteran of World War II, is he? A. Yeah.

"Q. What happened to him in the war that made it necessary?

"A. Well, seem to be shell shock.

"Q. Shell shock? A. Got to drinking alcohol; wasn't satisfied unless he was drinking all the time; take anything out of the house.

"Q. Mr. Rich, do you recall prior to the accident did you tell Earl Rich that he could drive your car?

"A. No, I didn't. He just stole the car. I didn't know he was going to take it".

It was further the testimony of Mr. Martin (plaintiff presented no evidence to the contrary) that on February 2, 1963, Earl was informed that the trial would be held early in March and he was requested to "hold himself in readiness" to come to St. Joseph on short notice. He was informed that he would be notified by telephone as to the exact date and was advised that his presence at the trial was absolutely essential. On March 6, 1963, Mr. and Mrs. Harry Rich were notified that March 11th had been fixed as the trial date. They notified Earl and sent him four dollars as bus fare and incidental costs of transportation.

The company's attorneys telephoned Earl at least four times prior to March 11th. He failed and neglected to respond to any of these telephone calls. At 1:32 p. m. on March 10, he personally acknowledged that he had been notified of the exact trial date, had been requested to attend and had received money from his parents for the costs of the bus trip. He failed, neglected or refused to respond or attend the trial. He was not present in court on the morning of March 11, the zero hour of the trial. Counsel for the company thereupon advised the Court of these facts and requested leave to withdraw. The request was granted and thereupon counsel did withdraw. The plaintiff then proved up her case against Earl H. Rich as a default matter and was awarded a judgment of $10,200. It is upon this judgment that the present garnishment action is predicated.

We believe two questions are presented: First, were garnishee's attorneys justified in withdrawing from the defense of the suit and, second, did the behavior of Earl H. Rich as to cooperation with insurer, including his failure to attend the trial, under all these circumstances amount to a failure to comply with a condition precedent of the policy and result in a release of the insurer from liability under the policy as to the Lenhart-Earl H. Rich casualty and lawsuit?

As to the first question the plaintiff offered no testimony or evidence controverting Earl H. Rich's alleged behavior and refusal to attend the trial as detailed by garnishee's witnesses Martin and Harry Rich. It is our opinion that their testimony, if believed, would afford a sound basis for and justified counsel's withdrawal. The trial court also thought so and its findings especially on matters involving credibility should be deferred to by this court. Now as to the second and final question namely, is the garnishee company absolved from liability under the policy and not answerable to plaintiff for the amount of the judgment or any part of it (the coverage here was only $5,000). We shall examine some of the precedents touching on this question.

The United States Court of Appeals, Seventh Circuit (Potomac Ins. Co. v. Stanley et al., 281 F.2d 775, 781) interpreted a like liability insurance proviso in an Indiana policy and held that the standard cooperation clause is a material condition of a liability policy and a breach of that condition relieves insurer of liability. The court said:

"We think the majority view, that the failure of an insured person to attend a trial and aid in the defense when a case against him is called for trial, is *per se*, prejudicial, is consistent with the established principle of Indiana law that one who would seek to enforce a contract for his benefit must show that he has performed all conditions on his part required to be performed as a condition precedent to his right".

In Bauman v. Western & Southern Indemnity Co., 230 Mo.App. 835, 77 S.W.2d 496, 498, plaintiff had recovered a judgment against an individual insured who was covered on her liability policy issued by defendant company. Plaintiff sued the company to collect the judgment and prevailed in the trial court. The insured, although not a witness to the accident, failed to appear in court at the trial although requested to do so. The court of appeals reversed outright the judgment against the insurer and said:

"The unexcused failure of an assured to co-operate with an insurance company in accordance with the conditions of the policy is sufficient to release the insurance company from liability on the policy, provided there be no bad faith on the part of the insurance company, and provided the condition requiring the assured's co-operation with the insurer was breached by a material lack of co-operation. Bassi v. Bassi, 165 Minn. 100, 205 N.W. 947; Finkle v. Western Automobile Ins. Co., 224 Mo.App. 285, 26 S.W. (2d) 843, 846".

■ The case of Fischer v. Western & Southern Indemnity Co., Mo.App., 106 S.W. 2d 490, 491, is very similar. Insured admitted that he received but did not answer insurer's letter requesting him to call and discuss the lawsuit, neglected to advise insurer whether he or the driver would be available for trial and admitted that he was offered free transportation to the place of trial. The court held that under these circumstances the insured was guilty of inexcusable lack of co-operation which relieved the insurer from liability under the policy as a matter of law. The appellate court gave a rather clear declaration of the law as applied to such situations in these words:

"It is of course the law that absent fraud or bad faith on the part of the insurance company, or collusion between it and the assured, the latter's unexcused failure to co-operate with the company in a material respect in accordance with the conditions of the policy so requiring will serve to release the company from liability under the policy. Finkle v. Western Automobile Insurance Co., 224 Mo.App. 285, 26 S.W. (2d) 843; Bauman v. Western & Southern Indemnity Co., [230] (Mo. App.) [835] 77 S.W. (2d) 496, 502. And not only must the assured co-operate, where the policy so requires, in the preparation of the defense to the end that the case may be made ready for trial, but it is held that his failure, without just cause or excuse, to appear in court at the time of the trial materially prejudices the insurance company in its efforts to defend the action brought against him, and constitutes a clear breach of the co-operation clause of the policy so as to warrant the company in disclaiming liability thereunder and in withdrawing from the defense of the case".

The same principle or applicable rule as announced by the courts of appeals in the Bauman and Fischer cases, supra, had the approval of the Supreme Court in Quisenberry v. Kartsonis, Mo., 297 S.W.2d 450, 453, where the court again interpreted the meaning of this cooperation clause in an insurance policy. We quote briefly from that opinion:

"The condition in a policy of liability insurance requiring insured to co-operate is valid and enforceable. The insured must perform the conditions of the contract upon which insurer's liability depends and, absent fraud, bad faith, or collusion by insurer, the insured's unexcused failure to cooperate in a substantially material respect releases insurer from liability under the policy as to the particular casualty in question".

Plaintiff in our case relies strongly upon Cowell v. Employers' Indemnity Co., 326 Mo. 1103, 34 S.W.2d 705. The Supreme Court in the Quisenberry case distinguished Cowell, pointing out that the insurer company garnishee had there pleaded in effect that the insured had breached the cooperative clause in that he falsely informed insurer that his automobile was not being driven by him or by anyone on his behalf at accident time, but had been stolen and was being operated by some unknown person; and that just prior to trial insured informed insurer that he was the operator of the automobile. Garnishee adduced no evidence. On appeal from a judgment entered on a directed verdict for plaintiff, garnishee made three contentions—none of which involved the cooperation clause—in fact, the court specifically noted that the defense of breach of contract had been abandoned on appeal. It appears that the Cowell case is of very little help to plaintiff on this appeal.

■ What constitutes "cooperation" within the meaning of the policy provisions is usually a question of fact. We believe the evidence here shows clearly a lack of cooperation. The defendant Earl H. Rich failed, neglected or refused to attend the trial although duly notified by his parents and by the insurer's representative and even though provided with funds for his

transportation costs. No explanation is offered or suggested for his lack of cooperation. In fact it affirmatively appears that he was not ill, was only a domiciliary resident at the Veterans Administration Facility and transportation from Wadsworth to St. Joseph by bus was available every few hours.

We believe that defendant Earl H. Rich failed to cooperate with the insurer within the meaning of the condition clause of the policy and that the company was justified in withdrawing from the defense. Since the indemnitee has not performed this condition precedent to liability, the garnishee was not only justified in refusing to defend, but was absolved from liability as to this particular casualty.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.