James **HUDSON**, Plaintiff-Respondent,

v.

**GENERAL MUTUAL INSURANCE COMPANY, a corporation, Defendant-Appellant.**

No. 32879.

St. Louis Court of Appeals.

Missouri.

July 25, 1968.

---

---

Robert W. Henry, Clayton, for appellant.

Sam Weber, St. Louis, for respondent.

TOWNSEND, Commissioner.

Under the rubric, Equitable Garnishment, plaintiff brought this suit, relying upon Section 379.200 RSMo 1959, V.A.M.S., to collect from defendant the amount of a judgment previously obtained against one Lupton, the insured in an automobile public liability insurance policy issued by defendant. In accordance with the stated statute, trial was had to the court resulting in a judgment against defendant for $5631.24. Motion for new trial was overruled.

The petition alleged defendant's issuance of an automobile liability policy to one Thomas K. Lupton, and proceeded with allegations that plaintiff was involved in an automobile collision with said Lupton on October 14, 1963; that timely notice of such accident was given to the defendant and that in 1965 plaintiff recovered judgment against Lupton on account of personal injuries suffered in such collision in the amount of $5255. Demand for payment of such judgment has been made upon defendant and defendant has refused to pay. Defendant by its answer denied all allegations of the petition except defendant's license to transact business in Missouri and the existence on October 14, 1963 of the policy in question. In addition defendant's answer set up as a special defence Lupton's failure to cooperate with the defendant. Plaintiff filed its Request for Admissions under Rule 59.01, V.A.M.R.; included in said request were admissions "1. That on October 14, 1963, there was in full force and effect, an automobile liability insurance policy, wherein Thomas Kidwell Lupton was the insured and General Mutual Insurance Company, the insuror." "2. [The fact of the Lupton-Hudson collision] and that said Thomas Kidwell Lupton, pursuant to the provisions of said aforementioned insurance policy, did give timely and due notice of said occurrence to said General Mutual Insurance Company." "4. That said policy of insurance provides that the insuror shall pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury and injury to property arising out of the use of the owned automobile of said insured under said policy." "5. That said insured, did, on December 23, 1965, become legally obligated to pay as damages to plaintiff herein, the sum of $5,255.00, by reason of the aforementioned occurrence on October 14, 1963, as evidenced by a judgment rendered in said suit on said date by the Circuit Court of St. Louis County, in the aforementioned lawsuit, in favor of said James Hudson and against said Thomas Kidwell Lupton, your insured."

■ By defendant's failure to answer the Request, the above recited statements of fact are deemed admitted under the abovementioned rule. Thereafter plaintiff filed its Motion for Summary Judgment, which

was denied by the court. Before proceeding with the trial of the case the court permitted plaintiff to file reply to defendant's special defence, in which plaintiff denied the allegations of the latter. The court thereupon ruled that the only issue left in the case was the question of the cooperation of the insured and directed the defendant to open.

We summarize the material portions of the testimony adduced at the trial of this cause in the circuit court:

The action in Hudson v. Lupton was one for personal injuries allegedly occurring as a result of the collision mentioned. Arising from the same collision was another action, Moss v. Lupton, brought for damages suffered by the owner of the car in which Hudson was riding. A third action, Moultrie v. Lupton, apparently had some relation to the same collision although the evidence is lacking as to the details thereof; Moultrie v. Lupton is referred to many times in the course of the testimony in the present case.

The policy was issued for the period April 27, 1963—April 27, 1964. On May 10, 1963, a modification endorsement of the policy was made, changing the coverage of the policy to a Dodge Dart automobile and adding a loss payable clause; this endorsement resulted in a return premium of $49.00. The collision occurred on October 14, 1963. On October 18, 1963, the adjuster for the defendant insured addressed Mr. Hudson, plaintiff herein, stating: "We handle adjustments for General Mutual Insurance Company, who carry Mr. Lupton's automobile coverage * * *. Mr. Lupton has advised of the accident involving your car * * *." Another modification endorsement of the policy was made on October 21, 1963; the only apparent effect of this endorsement was to note a change of Lupton's address to 2310 Chaucer, Overland, Missouri.

The petition in Hudson v. Lupton was filed on February 28, 1964 and the summons thereon was returned executed on March 12, 1964. When Lupton was served he forwarded the summons to the defendant herein. Under date of April 1, 1964 counsel Eaker advised Lupton that General Mutual Insurance Company had referred to his office the matter of handling the action brought by Hudson against Lupton.

When the matter of representing Lupton in Hudson v. Lupton was referred to counsel Eaker, the communication to Eaker was accompanied by a copy of the Breckenridge Hills police report relative to the collision of October 14, 1963; the reporting patrolman therein reported this Statement of Driver [Lupton]: "I made a right turn it was my mistake I made a wide turn on Woodson it is my fault." The patrolman's report stated further: "Driver's Condition. #2 [Lupton] Appeared Intoxicated." A copy of this police report is found in the adjuster's file and was introduced as a plaintiff's exhibit, along with a typewritten resume of information about the collision and its aftermath developed by the adjuster. Counsel Eaker testified that upon referral the resume was sent to him with the petition in the case. Adjuster Bommer testified that the adjuster's file was forwarded to Eaker on March 25, 1964.

The file of the defendant's underwriting department contains the following instruments:

(1) Typewritten memorandum, dated Jan. 28, 1964, referring to Lupton, to his policy number and to the adjuster's file number of the accident of October 14, 1963, and stating: "This assured is a habitual drunk; and he rear ended another vehicle driving while intoxicated." Typewritten signature "E.A.V.", the initials being the same as those of E. A. Vollmer, then claims manager of defendant.

(2) Typewritten memorandum, dated February 3, 1964, referring to Lupton and to his policy number, and stating: "We must have 250% of manual on the captioned policy, because he is an

habitual drinker and rearended someone while intoxicated." Typewritten signature, "T. Wong". T. Wong is identified as an underwriter of defendant by Mr. Bommer, the adjuster.

(3) Modification endorsement of the Lupton policy dated February 7, 1964, effective as of "1/28/64", carrying the notation: "Add'l a/c accidents and violations" and charging an additional premium of $40.50 for the policy period 4/27/63 to 4/27/64.

(4) Copy of notification of cancellation of policy, dated March 5, 1964, effective March 17, 1964, addressed to Lupton at 2310 Chaucer, Overland, Missouri, together with post office certificate of mailing to Lupton at 2310 Chaucer.

(5) Typewritten memorandum, dated April 8, 1964, stating: "Recommend cancellation. He is a drunk." Typewritten signature "E. A. Vollmer".

The Circuit Court file in Hudson v. Lupton carries the notation: "Jan 22, 1965. Cause placed on trial calendar for Apr 19, 1965"; the following minute entries appear therein:

"April 23, 1965.  Cause called, continued and reset.

April 23, 1965.  Cause reset for Sep 20, 1965 at 9:30 A.M.

Sep 24, 1965.  Cause called, continued and reset.

Sep 24, 1965.  Cause reset for Dec 13, 1965 at 9:30 A.M.

10–5–65.  Deft's interrogatories filed."

———◆———

On April 9, 1964, Eaker wrote to Lupton that the attorney for Hudson wished to take his deposition and that the deposition had been scheduled for April 22, 1964 and concluded: "If you cannot keep this appointment, please contact me immediately and let me know; otherwise I will see you on April 22, 1964." On that date Hudson's deposition was taken but Lupton did not appear. Eaker's recollection is that the deposition was scheduled "One or two more times in this case" but that Lupton never appeared for a deposition either in Hudson v. Lupton or in the companion cases of Moss v. Lupton and Moultrie v. Lupton. Otherwise the record is barren of any communication to Lupton for almost a year, i. e., until March 22, 1965 when Eaker wrote to Lupton: "This is to inform you that the above case [Hudson v. Lupton] is set for trial on April 19, 1965, in the Circuit Court of the County of St. Louis. We will need you to testify in Court during that week, if and when you are needed." Similarly, Eaker wrote to Lupton on May 20, 1965 advising of a June 14 setting in Moss v. Lupton; this letter stated "We will need you to testify in Court during that week, if and when you are needed. Please call this office and let us know if you will be available during that week and where you can be reached on short notice if you are needed. Since this case is set for trial, we will need to take depositions. As yet we do not have any scheduled. You will be receiving another letter from us as to the day and time the depositions will take place. We would like for you to be here for these depositions." This letter was addressed to Lupton at 2310 Chaucer, Overland, Missouri. Called as a witness in the present case, Lupton testified that when he first received notice of the desire to take his deposition he attempted to reach Eaker at his office but was unsuccessful; he then left a message for the latter asking him to set a different date for the deposition because of his employment on a job being run in its entirety by himself where it was necessary that he be present at the time set; in this

message he asked that the deposition be set for a Saturday or for an evening when he would be present; when the second notice of intention to take his deposition was received he again called Eaker's office but was unable to reach him and left the same type of message for him as before; he was never subsequently contacted by anyone regarding depositions.

On an unspecified day in September, 1965, Lupton turned over to his personal attorney, Mr. Flint, a form letter from the Eaker office dated August 24, 1965, advising that Hudson v. Lupton was "set on the trial docket during the week starting Sept. 20, 1965." When this letter was introduced as a defendant's exhibit the inked letters "Nov" appeared in the body of the letter following "Sept. 20". Mr. Flint stated that he knew that the notation was not in the handwriting of Lupton and was at a loss to understand how the notation originated. The form letter continued: "This does not mean that your case will definitely be tried during that week but we must know that you are available in the event that your case is assigned to trial sometime during that week. Upon receipt of this letter please call our office to let us know that you are available and also to let us know where we can reach you on short notice during the above week if it should become necessary."

Mr. Eaker testified that on September 20, 1965, he called a telephone number which had been given him as Lupton's number by Lupton's divorced wife, that a male voice answered, that he asked for Lupton and that he left his name and number with the request that Lupton contact him with regard to Hudson v. Lupton and that the matter was urgent. Eaker stated that he again called Lupton at the same number "three or four weeks before that was set on December 13" and left word that he needed to get in touch with Lupton, that he had at least three conversations with the man who answered the phone before December 13. Eaker now identifies the voice which he heard upon such occa-

sions with that of Lupton with whom he was in contact face to face for the first time in January or February 1966. The Eaker file contains no memoranda of the calls about which Eaker testified other than the call of September 20. Lupton denied the receipt of telephone calls so allegedly made by Eaker to his place of residence and stated that the first time he had been contacted by Eaker by telephone was in January 1966.

Eaker states that he received no phone calls from Lupton prior to December 13, 1965, nor did he receive any message prior to that date that Lupton had called him.

The secretary in Eaker's office testified that between March 1964 and December 1965 she received no telephone call from Lupton. The receptionist testified to the same effect as to the period January-December 1965.

Upon cross-examination Lupton testified regarding the form letter dated August 24:

"Q. Did you call Mr. Eaker as a result of receiving this letter?

A. Emphatically.

Q. You did? A. Yes, sir.

Q. What was the response?

A. Can I testify to the response now?

Q. You sure can.

A. I spoke to Mr. McGuire [office associate of Eaker]. Mr. Eaker wasn't there. He told me he wasn't involved in the case and I had to speak to Mr. Eaker. I then called my attorney and turned the letter over to him.

Q. You went in to your attorney to talk to you about this?

A. Yes, sir.

Q. Did your attorney tell you what a setting on a trial docket means?

A. He told me to wait until I heard from them, telling me when, exactly, I was to appear in court.

Q. This letter also asked you to contact their office?

A. That is what I tried to do. I got your office several times. I was never able to engage in conversation with Mr. Eaker.

Q. Oh, say four times you called, is that the most times you called?

A. I called three times on this one, I called once with regard—after they notified me they were in the thing I called twice for deposition purposes and finally realized it was a hopeless case to try and reach that and I turned it over to my attorney and he said wait 'til they contact you again.

Q. After you went to your attorney's office in September for that September setting there, what advice did your attorney give you concerning that letter?

A. He told me to wait until I heard from them setting the trial date and then to appear.

Q. And, he didn't tell you that that letter was telling you of a trial date?

A. He told me it is a period of time which it could fall but it also stated I would be notified of the day and when I was to appear.

Q. He didn't tell you to make any further effort to contact Mr. Eaker?

A. I tried again. I think this was also part of his instructions, to try and reach him * * *. I called him three times that day.

Q. Three times in one day? A. In one day.

Q. That was on the Hudson case, wasn't it?

A. Yes, sir."

The only other evidence pertinent to the setting of September 20 is the testimony of Eaker that the setting number of Hudson v. Lupton on the docket on that date was "something like ninety * * * I am not sure" and the testimony of Flint that he got the impression, probably from Lupton, that the case was not going to be tried on that date.

On November 19, 1965, Eaker sent to Lupton a form letter informing him that Hudson v. Lupton was set on the trial docket during the week starting December 13, 1965. The form was the same as that previously used in advising him of the September 20 setting. To the letter of November 19 was added the postscript:

"P.S. It is very important you call our office and leave a telephone number with us where you can be reached. Thank you."

As to his letter Eaker testified:

"Q. This letter advises him the case is set for trial on December 13 and goes on to say this case will not be definitely tried during that week, is that right?

A. That is true.

Q. Did you end this letter telling him to be in court on that date?

A. No, I asked him to get in touch with me immediately."

Eaker stated that he got no response to this letter, nor did he receive any telephone calls from Lupton prior to December 13.

On November 24, 1965, Eaker addressed Lupton by certified mail regarding the three cases of Moss v. Lupton, Hudson v. Lupton and Moultrie v. Lupton and stated:

" * * * You were notified just recently, by our letter dated November 19, 1965, that the one case—Hudson v. Lupton will be on the trial docket on Monday, December 13, 1965. We had written you previously in connection with this case and the other cases and have on numerous occasions asked that you contact our office for depositions and to let us know whether or not you would be available for trial during the times these cases have been set on the docket.

To date, we have never had a reply of any kind from you in response to the letters which we have written. Furthermore, I have called your telephone number, which I have as WYdown 4–0439, and left word for you to call and to date you have failed to do so.

At this time we are going to have to take the position that you have failed to cooperate and apparently have no intentions of cooperating with us in the handling of these three cases, and for that reason we will have to contend that you have breached a condition of the policy and we must take the position that you are now not entitled to a defense and coverage under the policy, and will ask leave of Court to withdraw from the defense of all three of these cases. I trust that this is clear to you."

This letter was received by Lupton on December 10 (a Friday), on which date he states that he took the letter to his attorney who then endeavored to reach Eaker— "he called him while I was in his office and got the same treatment."

Mr. Flint testified that, since the last letter indicated that Eaker was withdrawing, "I immediately put in a phone call to Mr. Eaker's office." Q. "Then what happened?" A. "He was to have called back but did not." Q. "Well, at least, you didn't get a call from him, is that right?" A. "That is right." Further Flint testimony:

"Q. What further effort did you make to get hold of Mr. Eaker?

A. I wrote him a letter. I think I dictated it Saturday. At any rate, it went out Monday * * *.

Q. That wouldn't be the 13th, would'nt it?

A. That is correct.

Q. What other efforts did you make to get hold of Mr. Eaker, other than the letter?

A. I had expected a response and, on the 14th, someone called and indicated Mr. Eaker had phoned on the 14th, and had withdrawn from these cases. Then since then—since this was not the only file in my office and I didn't expect, rightly or wrongly, that a default would immediately be taken before I could reach Mr. Eaker, I ran into him * * * on Thursday or Friday of that week.

Q. And you had a conversation at that time?

A. Yes.

Q. And, basically, what was that conversation?

A. The gist of the conversation was that I didn't agree on the basis of the information that I had that General Mutual had a right to withdraw the representations in these three cases. He informed me that he had withdrawn and that Sam Murphy intended to take a default in the case."

The minutes in the Circuit Court file read:

"12–13–65. Cause called. Plff. appears by attorney. Deft. thou. thrice called appears not. Eaker, Heath, Dempsey and Lloyd E. Eaker withdraw as attys. for deft. Cause set for hearing on Dec. 17, 1965 at 2:00 P.M.

12–23–65. Cause called. Plff. appears in person. Deft. though thrice called appears not. Cause heard. Judgment and finding in favor of plff. and against deft in the sum of $5255.00 and costs. M.A.M.  [Judge Ferriss]."

The policy issued to Lupton by defendant provided insurance coverage not only with respect to Lupton's liability to others but also for collision damage to Lupton's own car. The defendant's evidence tends to show that Lupton was irked because he had not had a satisfactory settlement by defendant for that damage. Lupton's divorced wife testified that before their marriage she and Lupton had discussed the

collision and that he had said "until he got his money from the insurance company, he wasn't going to do anything about it." Eaker stated that at some time after December 13 Lupton told him that he wasn't going to help General Mutual in any way because they had refused to pay what he wanted on the repairs of his car. Lupton denied that he had made either of these statements.

When attorney Flint was examined as a witness for defendant concerning Lupton's delivery to him of the Eaker letter relating to a setting for the week of September 20, the following questions and answers were had:

"Q. When Mr. Lupton brought it to you, he told you, did he not, he didn't intend to appear or cooperate with General Mutual?

A. No, that is not at all what he said.

Q. Didn't he tell you there was a collision loss outstanding, he wasn't going to do anything until he got payment?

A. No, it is not.

Q. What did he tell you?

A. He brought the letter in to me and indicated about the prior conversation with me about recovering from General Mutual. He brought the letter and asked what his obligations were here and pointed out General Mutual wouldn't even answer his phone calls. And, under the circumstances, should he—what should he do * * *.

Q. What was your response?

A. My response to him was that first, because they had refused to pay his collision claim, didn't mean that he shouldn't cooperate fully with them and I further pointed out that in view of the reputation of this particular company, he should be particularly careful to cooperate fully."

Despite the Eaker letter of November 24, 1965, stating that Lupton was "now not entitled to a defense" in the three cases, Eaker thereafter represented Lupton in Moss v. Lupton. After trial was started in the latter case in May 1966, Eaker effected a settlement with the plaintiff therein.* Under date of June 7, 1966, Eaker wrote to the defendant explaining the background and terms of the settlement and stating: "We felt that since this was an aggravated case of liability that we were well out of this case by settling" for the amount stated in the letter; he testified as follows regarding the letter:

"Q. So, you really did term this an aggravated case of liability?

A. I would say not based on what Mr. Lupton told me.

Q. Where did you get this other information?

A. Putting everything together, plus I actually paid too much on the case and this is the only way I had to justify it to the client * * * I paid too much money. I tried to justify it to my clients * * *."

By Civil Rule 73.01 we are instructed that, in a court-tried case, "The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

The sole point made by the appellant in its brief is that "The Court erred in ruling in favor of respondent for the reason under the law and the evidence the verdict should have been for appellant."

It is not necessary to linger long on that part of appellant's point which refers to the law. The parties have evinced no differences as to the applicable law and

* The record gives no information regarding the handling or disposition of Moultrie v. Lupton.

it is clear that a readiness on the part of the insured to cooperate would produce one result while a refusal to cooperate would bring about the opposite result. Attention must be devoted then entirely to the factual question of whether the insured refused to cooperate with the insurer.

■ When the trial judge gave judgment for the respondent he filed no opinion in the case and he made no findings of facts. Rule 73.01 dictates that, under such circumstances, factual determinations shall be deemed made in accordance with the result reached in the lower court. Accordingly, the situation must be treated as one in which the trial judge has made a finding of fact that the insured did not refuse to cooperate.

■ On the issue of refusal to cooperate, significance cannot be attached to the failure of Lupton to appear for the deposition which Hudson's attorney wished to take. The advice which Eaker gave him that such a deposition had been scheduled did not direct a command performance but left his appearance largely to Lupton's discretion or convenience—"If you cannot keep this appointment, please contact me immediately and let me know." According to Lupton's testimony, he left a message with Eaker's office indicating the serious inconvenience of appearing at the stated time, asked that a different setting be made and stated that he would be glad to appear at a more conveniently arranged time.

The evidence upon which appellant principally relies to show Lupton's refusal to cooperate was of two varieties:

A. Failure of Lupton to respond to messages from Eaker asking him to contact Eaker in order to indicate his availability.

B. Failure of Lupton to appear in court at the beginning of the week in which Hudson v. Lupton was scheduled to be tried.

■ As to the evidence under category A, there was testimony denying the receipt of some of the messages allegedly received by Lupton. As to other messages there was testimony contradicting the testimony that he had failed to respond to such messages and giving the details of his responses. In general the evidence so categorized under A was contradicted by testimony produced on behalf of respondent.

As to the evidence under category B, the form in which Lupton was advised of a setting for a particular week has already been set out. There is no evidence that he was ever instructed by Eaker to be in court on a particular date. The record does not disclose what happened during the original setting week, namely, that of April 19, 1965; we have in evidence only the March 22 letter of Eaker to Lupton advising of such setting and informing him of the possibility that his testimony may be needed during that week. The testimony as to the setting for the week of September 20 has been recited. Before the week of December 13 arrived Eaker had informed Lupton that he was withdrawing from the case.

Upon our independent review of the conflicting testimony relating to category A, we cannot say that Lupton's conduct demonstrated any design to make himself unavailable to the defendant or to defendant's counsel for consultation or information. His unavailing efforts to reach counsel Eaker negative any such intention. Resolving such conflict in favor of respondent we find as a fact that Lupton's conduct in the matters specified did not constitute a refusal to cooperate.

In the area of the conflicting testimony under the above designated category A, it was peculiarly the function of the trial judge to judge of the credibility of the witnesses, a function to which this Court is required to give due recognition under Rule 73.01. Here the trial judge has necessarily considered the credibility of the witnesses on both sides of the controversy and, in the areas of conflict, he has by his judgment accorded credibility to the witnesses for respondent, a conclusion with which we find ourselves in agreement.

When an insured layman is notified that his case is set for trial during a named week we do not deem it necessary that, in order to indicate a cooperative spirit, he appear in court on the first day of the named week, in the absence of some advice from his company appointed counsel that his presence at that time is desired by counsel. At the extreme, obligation of cooperation must be measured by that which he is asked to do. He relies upon his appointed counsel to direct him as to the type and extent of his participation. The mere statement that his case has been set for trial during a particular week does not direct him to do anything. As stated, in the present case, there is no evidence that the insured was ever told to be in court on a particular date. On the contrary, the advices here as to trial settings made the matter of his appearance in court even more uncertain and indefinite by telling him that "this case will not be definitely tried during that week." Under the evidence no significance can be attached to Lupton's failure to be in court on the first day of each of the setting weeks of April 19, 1965 and September 20, 1965. Under this head we find no refusal to cooperate.

The precedents which have been cited by the appellant are not here apposite. Here the issue is one of fact: Did the insured refuse to cooperate? In both Lenhart v. Rich, Mo.App., 384 S.W.2d 812, and Fischer v. Western & Southern Indemnity Co., Mo.App., 106 S.W.2d 490, trial of the underlying case against the insured was set for a day certain; in each case the insured refused to appear for the trial although in each case he had been furnished transportation to the place of trial. In neither case was the reviewing court in any doubt as to the fact of lack of cooperation; in each case the court directed its attention to the legal effect of a refusal to cooperate. In Bauman v. Western & Southern Indemnity Co., 230 Mo.App. 835, 77 S.W.2d 496, the insurer's efforts to locate the insured in order to apprise him of the date of trial and to assure his presence at the trial brought forth the information that the insured had "skipped the country"; subsequent investigation showed that the insured's family had without success engaged detectives to locate him. In such case no genuine fact question of refusal to cooperate arises.

The appellant has failed to sustain the burden of persuasion cast upon it by the state of the pleadings.

We find that the conduct of Lupton did not constitute a refusal to cooperate.

The conclusions at which we have arrived renders it unnecessary to pass upon a further point raised by respondent, namely, that there was a lack of diligence upon the part of appellant in preparing a defence to the suit of Hudson v. Lupton.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, the judgment is affirmed.

ANDERSON, P. J., WOLFE, J., and DOUGLAS W. GREENE, Special Judge, concur.