Arnold COLSON, Plaintiff-Respondent,

v.

LLOYD'S OF LONDON, Garnishee-Appellant.

No. 25030.

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1968.

H. H. McNabb, Jr., Belisle, McNabb & Kyser, Butler, for garnishee-appellant.

E. J. Murphy, Butler, for plaintiff-respondent.

JAMES W. BROADDUS, Special Commissioner.

On May 13, 1964, a petition was filed by plaintiff, Arnold Colson, in the Circuit Court of Bates County against Paul Wuthrich and Western Surety Company for damages growing out of an alleged false arrest of plaintiff by defendant Wuthrich, and against Western Surety Company on the official bond of the Sheriff of Bates County, Missouri, Wuthrich being a deputy sheriff.

The petition contained a prayer for both actual and punitive damages. Writs of summons were issued and duly served. Thereafter Carl Gum, of the firm of Thayer & Gum, entered this appearance as the personal attorney for Paul Wuthrich, defendant.

An answer generally denying all the allegations of plaintiff's petition, was filed on August 20, 1964, signed by the firm of Thayer & Gum as attorneys for defendant, Paul Wuthrich, and by the firm of Belisle, McNabb & Kyser, attorneys for defendants.

The case was ultimately set for trial on January 7, 1965. Prior to entering into trial plaintiff dismissed without prejudice as to Western Surety Company. On trial date H. H. McNabb, Jr., appeared as attorney for the remaining defendants and no one from the firm of Thayer & Gum appeared for or on behalf of defendant Wuthrich personally. Wuthrich himself was not present. On such date McNabb as attorney for Lloyd's of London, liability insurer of defendant Wuthrich, filed application for continuance for the reason, among others, that neither defendant nor his personal counsel were present, which application was overruled by the Court.

Thereafter McNabb asked leave to withdraw from the case on behalf of the defendant insurer, which application was overruled by the Court. Whereupon counsel announced that the insurer denied coverage under the policy for non-cooperation of the defendant Wuthrich.

Defendant's attorney continued in the courtroom, but did not participate further in the trial of the case. Plaintiff waived a jury and submitted his evidence to the Court and the Court thereafter rendered judgment for plaintiff for $5,000 actual damages and $2,500 punitive damages, plus costs. Thereafter garnishment was issued under an execution; interrogatories were propounded, and in its answers to interrogatories garnishee-appellant admitted having issued a certificate of insurance listing Paul Wuthrich as an insured, but denied liability under the insurance contract for the reason that the insured failed to "give all information and assistance" as required by the policy, in that defendant failed and refused to sign his deposition in the cause; employed personal counsel, and that defendant and such personal counsel failed and refused to appear on the date of the trial; that such failure of defendant to appear prejudiced this garnishee in defense of the claim.

Plaintiff thereafter filed denial of garnishee's answer denying that garnishee's answer constituted a defense to the garnishment. The matter was set for trial, and on October 20, 1967, evidence adduced to the Honorable W. O. Jackson. Judge Jackson deferred ruling on the matter and died without ever having made a ruling.

Thereafter, on January 4, 1968, before Honorable Kelso Journey, evidence was again submitted.

It is admitted that Plaintiff's Exhibit 3, a policy of insurance entitled "False Arrest Insurance" was in full force and effect at the time of the false arrest. The insuring clause in Exhibit 3 provides as follows:

"* * * This insurance covers the assured against loss by reason of liability imposed by law upon the assured,

by reason of any false arrest, assault and battery (as herein defined), false imprisonment or malicious prosecution which may be committed or alleged to have been committed during the currency period of this certificate: * * *"

The policy excludes acts committed prior to the inception date of the insurance; claims for libel or slander or the existence of a "kangaroo court" or claims for invasion of property rights.

Paragraph 9 provides that the assured shall use due diligence to do and concur in doing all things reasonably practicable to avoid the happening of any peril insured against. Under paragraph 6, it is provided " * * * and insured shall give all information and assistance as the underwriters may reasonably require."

As stated, there were two garnishment hearings held. In both hearings, the testimony of attorney McNabb was the sole testimony introduced on behalf of the garnishee.

In the first hearing McNabb testified that he wrote to Attorney Gum, who was representing Wuthrich personally, on October 14, and notified him of the trial setting; that he had three or four other contacts with Gum who assured McNabb that defendant would be at the trial. He recalled a personal telephone conversation with Wuthrich and another with his wife near Thanksgiving of 1964, at which time he advised him of the trial and emphasized the importance of the defendant's appearance.

At the second hearing McNabb repeated his testimony concerning the letter dated October 14 addressed to Gum but at this hearing denied that he had had any contact with the defendant Wuthrich in person, by telephone or by letter from October to January. He stated he did not give notice to Wuthrich that his presence was required at the trial set for January 7, 1965, other than the notice mailed to Gum; that there was no specific agreement between McNabb and Gum that Gum was to be responsible for having the defendant appear on the day of trial. McNabb made no attempt to locate Wuthrich although he knew what his address was in Harrisonville. He stated that he thought he had written to defendant Wuthrich but could not find a copy of any such letter and, therefore, assumed that he did not write although he intended to do so.

At the second hearing, the testimony of Attorney Carl Gum was introduced on behalf of the plaintiff. Gum testified that he was hired as personal attorney for defendant; that he came to Butler and talked with McNabb who informed him that McNabb was representing both insurance companies in defense of the case; that there was never an agreement that Gum was to be responsible for producing the defendant at the time of the trial; that McNabb did all the work in preparing the defense although an associate of Gum's, Miss Charlotte Thayer, did attend the depositions. Gum testified that the only notice he received of the trial setting, that he could remember, was a telephone call from McNabb the evening before the trial at which time McNabb asked if Gum was going to be present. Gum then informed McNabb that he was not going to be there and requested McNabb to request leave of court to allow Gum to withdraw as attorney of record. He believed that McNabb did ask where Wuthrich was, and Gum told him the last he had heard Wuthrich was in California; that Gum could find no letter from McNabb in his file advising of a trial date although it could have been misfiled; that shortly after the depositions were taken in August, Gum made a demand upon Wuthrich for payment of an attorney fee which Wuthrich had failed to pay; and Gum had advised McNabb at that time that he was going to get out of the case unless his fee was paid. Gum specifically differed with McNabb concerning the contents of the telephone call on the eve of the trial; Gum thought McNabb was the one who told him that defendant had gone to California.

Thereafter, on January 22, 1968, the court entered its findings in favor of plaintiff and against the garnishee in the amount of

$7500 plus interest at 6% per annum from January 7, 1965, or a total of $8867.50. Garnishee filed a motion for new trial, which was overruled and this appeal followed.

Although Lloyd's of London was never designated as a party during the entire lawsuit and their name did not appear of record on the insurance policy, it was recognized by all parties to the lawsuit that they were, in fact, the underwriters for the certificate of insurance in question under the master policy issued to the National Sheriff's Association. Therefore, in the interest of clarity and simplicity, by agreement of all parties, the style of the case was designated by the Court to be Arnold Colson, plaintiff vs. Paul Wuthrich, defendant, Lloyd's of London, Garnishee.

Appellant-Garnishee contends that the court erred in finding that it "had failed to prove lack of cooperation by the assured, so as to avoid liability under the insurance policy in evidence."

■ It should be kept in mind that the insurer has the burden, in a garnishment action by a judgment creditor of an insured to prove that the insured's actions constituted a failure to cooperate. Meyers v. Smith, Mo., 375 S.W.2d 9; State Farm Mutual Auto Ins. Co. v. Mid-Continent Casualty Co., Mo.App., 378 S.W.2d 232.

Appellant cites the case of Taff v. Hardwick and Empire Fire & Marine, Mo.App., 419 S.W.2d 482. In that case this court announced that the law in Missouri requires cooperation between the assured and the company. At page 485 of that decision the following appears:

" * * * And not only must the assured co-operate, where the policy so requires, in the preparation of the defense to the end that the case may be made ready for trial, but it is held that his failure, *without just cause or excuse,* to appear in court at the time of the trial materially prejudices the insurance company in its efforts to defend the action brought against him, and consti-

tutes a clear breach of the co-operation clause of the policy so as to warrant the company in disclaiming liability thereunder and in withdrawing from the defense of the case." (Emphasis supplied.)

Thus the key issue is whether defendant Wuthrich failed to appear at the trial *"without just cause or excuse."*

In the more recent case of Kitchen v. McCullough, defendant and General Mutual Insurance Company, garnishee, Mo. App., 428 S.W.2d 907, this court referred to the *Taff* decision and said, 1. c. 909:

"While non-cooperation of insured is a valid defense yet, in a case such as this, *insurer should present evidence of the fact by showing what steps it took in order to locate insured and to secure his cooperation in defending the action.* This was done in the Taff case and in Lenhart v. Rich, 384 S.W.2d 812 (Mo.App.). Unless the court knows the extent, in reasonable detail, of the steps taken in this regard, it is unable to judge whether there was fraud, collusion, or bad faith. Such evidence appeared in the Taff v. Hardwick and Lenhart v. Rich cases, supra, but it is wholly lacking here. If we should hold that a suitable showing of diligence was made in this case, we would open the door to perpetrators of fraud, and invite their entry. This we refuse to do. This record fails to show that the garnishee exercised reasonable diligence to locate the insured and procure his cooperation. See Pennsylvania Threshermen and Farmer's Mutual Casualty Ins. Co. v. Owens, 238 F.2d 549, 550–551 (4th cir.); State Farm Mutual Automobile Ins. Co. v. Farmers Ins. Exchange, 238 Or. 285, 387 P.2d 825, 829, 393 P.2d 768." (Emphasis supplied.)

■ From the transcript the following uncontroverted facts appear: (1) There was no understanding or agreement between attorneys McNabb and Gum that Gum was to produce Wuthrich at the trial: (2) The obvious reason that Wuthrich did not appear at the trial was that no one (McNabb or Gum) told him about the case being set

for trial on January 7, 1965: (3) Garnishee knew where Wuthrich was, at least from October up to the time Wuthrich purportedly went to California to work, but made no attempt to notify him: (4) Wuthrich's wife and children remained in Harrisonville. It is not reasonable to assume that Mrs. Wuthrich could not have informed garnishee of her husband's address had that request been made of her.

Thus this record "fails to show", as did the record in the Kitchen case, "that garnishee exercised reasonable diligence to locate insured and procure his cooperation."

Appellant next contends that the trial court erred in finding that the insurance policy in evidence covered punitive damages and cites two automobile liability insurance cases, Crull v. Gleb, 382 S.W.2d 17, Mo.App. and Northwestern National Casualty Co. v. McNulty, 5 Cir., 307 F.2d 432.

The policy here involved is entitled "False Arrest Insurance" and contains the language: " * * * This insurance covers assured against loss by reason of liability imposed by law upon the assured, by reason of any false arrest, assault and battery, false imprisonment or malicious prosecution which may be committed or alleged to have been committed during the currency period of this certificate (a) by the assured in his official capacity as sheriff, deputy sheriff, special deputy sheriff or municipal, state or federal enforcement officer.

"This insurance shall not cover claims arising from libel or slander, or from the existence of a 'kangoroo court', or claims for invasion of property rights."

In the *Crull* case, supra, the policy provided liability coverage to defendant and promised to pay on his behalf subject to all the terms of the policy, all sums which the insured "may become legally obligated to pay as damages because of bodily injury, sickness or disease, including death resulting therefrom, and injury and destruction to property arising out of the ownership or use of defendant's automobile * * *," and

further stated that the *policy did not* apply to bodily injury or property damage caused intentionally by or at the direction of the insured. 382 S.W.2d l. c. 19.

In the *Crull* case, the court specifically stated that there "is no language in the policy that provides for the payment of judgments for punitive damages" and "the policy covers only damages for bodily injury and property damage sustained by any person * * * punitive damages do not fall in this category." l. c. 23. The court further said the "garnishee did not participate in the wrong, and was under no contract to indemnify as such." l. c. 23.

Plaintiff's counsel states in his brief that he could find no like case concerning false arrest and false imprisonment insurance coverage in his research of the subject. And our independent research has also been futile. There is a complete annotation of cases under the broad category contained in 20 A.L.R.3d 343: "Liability Insurance Coverage as Extending to Liability for Punitive or Exemplary Damages." And in 14 Mo. Law Review 175, is an excellent article written by James P. Aylward, Jr., showing the historical background of this vexing problem of whether an insurance company should be held liable upon an insurance contract for punitive damages.

In 20 A.L.R.3d at page 344, it is stated: "In several cases contentions by insurers that the language of a liability policy did not extend to providing coverage for punitive damages assessed against insured have been rejected, the courts concluding that the policy language was broad enough to insure against such liability." In those cases the insurer agreed to pay on behalf of the insured all sums which the insured should become obligated "to pay by reason of liability imposed by law."

■ The instant policy covers "loss by reason of liability *imposed by law* upon the insured by reason of any false arrest * *." In other words, the liability does not have to arise out of bodily injury or be accidently

inflicted as was required in the *Crull* case, cited by appellant, but rather covers any "loss * * * *imposed by law.*" Clearly the language of the policy before us does not limit recovery to actual or compensatory damages but undertakes to pay for all losses. In our opinion, appellant fully intended to cover its insureds who committed wilful, intentional and malicious acts in their capacity as law enforcement officers. If appellant had intended otherwise, it could have easily excluded such occurrences in the language of its policy.

We come now to appellant's argument that if this judgment is upheld it would be a violation of public policy. Again appellant relies upon the *Crull* opinion which says: "We hold that to allow a motorist to insure himself against judgments imposed against him for punitive damages, which were assessed against him for his wanton, reckless or wilful acts would be contrary to public policy." In support of its holding the opinion cites the *McNulty* case, supra, 307 F.2d 432, which, as we have stated, was also an automobile liability insurance case. One of the reasons for the court's holding in the *McNulty* case is thus expressed " * * * considering the extent to which the public is insured, the burden would ultimately come to rest not on the insurance company but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would then be punishing itself for the wrong committed by the insured."

In the well considered opinion by the Supreme Court of Tennessee in the case of Lazenby v. Universal Underwriters Ins. Co., 214 Tenn. 639, 383 S.W.2d 1, 5, the court discusses at length the *McNulty* opinion and says " * * * we do not reach the same conclusion as the Fifth Circuit on the public policy issue * * *." The court thus expressed its reasoning: "The insurance contract in the case at bar is a private contract between defendant and their assured, Norman Frank Cruthfield, which when construed as written would be held to protect him against claims for both compensatory and punitive damages. Then to hold assured, as a matter of public policy, is not protected by the policy on a claim for punitive damages would have the effect to partially void the contract. We do not think this should be done except in a clear case, and the reasons advanced do not make such a clear case."

However, these automobile liability cases we have discussed do not govern the instant case. Here we are faced with the problem of whether it would be against public policy to permit an association of law enforcement officers to insure themselves against alleged wilful and intentional acts. In our opinion, it would not. It would be extremely rare, particularly in a suit for false imprisonment where the insured participates in the restraining or manhandling of the plaintiff, for there not to be an assertion that this was ground for the assessment of punitive damages. During the year we have seen violence stalk the streets of our cities. And it is common knowledge that the rate of crime throughout the country is on the increase. This has brought about great public demand for more and better trained law enforcement officers. What effect, it may well be asked, would it have upon qualified persons giving heed to that demand if they were told by the courts that they could not enter into a contract which would afford them protection against financial loss arising from claims for punitive damages? That it would tend to discourage them from entering into that public service goes without saying.

The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the court and the judgment is affirmed.

All concur.