**NEW MADRID COUNTY REORGANIZED SCHOOL DISTRICT NO. 1, ENLARGED, Appellee,**

v.

**CONTINENTAL CASUALTY CO., Appellant.**

**NEW MADRID COUNTY REORGANIZED SCHOOL DISTRICT NO. 1, ENLARGED, Appellant,**

v.

**CONTINENTAL CASUALTY CO., Appellee.**

**Nos. 89–1986, 89–2025.**

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1990.

Decided May 29, 1990.

John J. Mohan, St. Louis, Mo., for Continental Cas. Co.

Harold D. Jones, New Madrid, Mo., for New Madrid County Reorganized School Dist.

Before WOLLMAN, Circuit Judge, and FLOYD R. GIBSON, Senior Circuit Judge, and DUMBAULD,* Senior District Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

New Madrid County Reorganized School District No. 1 ("the School District") brought this suit against its insurer, Continental Casualty Company, for reimbursement under a liability insurance policy for sums the School District paid to a group of its teachers in settlement of a § 1983 suit. The School District also sought damages for vexatious refusal to pay and attorneys' fees. The district court[1] held that the School District was entitled to recover the settlement it paid to the teachers. It found, however, that the School District was not entitled to damages for vexatious refusal. In addition, the district court awarded the School District attorneys' fees.

We affirm the district court's holding that Continental Casualty is obligated to cover the School District's liability to the teachers in the § 1983 suit. We affirm the ruling that Continental Casualty is not liable for vexatious refusal. However, we reverse the district court's award of attorneys' fees.

I. BACKGROUND

In August 1980 Continental Casualty issued to the School District a liability insurance policy entitled "Board of Education Liability Including School District Reimbursement Policy," which was effective from August 25, 1980, through August 25, 1983. The policy provided coverage to the School District for claims made against it for "wrongful acts." The policy defined "wrongful act" as:

any actual or alleged errors or misstatement or misleading statement or act or omission or neglect or breach of duty by the Assureds in the discharge of their duties, individually or collectively, or any

matter claimed against them solely by reason of their being or having been Assureds during this policy period.

Appendix at 75.

The policy provided for some exclusions, including, for example, claims against the School District for false arrest, libel, slander, defamation of character, assault, and battery. It did not contain any general exclusion for claims against the School District for intentional wrongful acts. Nor did the policy include a duty-to-defend provision. Rather, it stated that the School District must retain its own legal counsel for the defense of any claim covered under the policy.

In October 1982, the Missouri National Education Association and other plaintiffs consisting of ten current and former teachers of the School District (collectively "the teachers") commenced a federal lawsuit based on 42 U.S.C. § 1983 against the School District. The teachers alleged that the School District denied renewal of teaching contracts, made involuntary reassignments, and denied certain contractual benefits in retaliation for the teachers' exercise of their First Amendment rights in joining a particular educational association. A jury returned a verdict in favor of two of the teachers but awarded them no damages. The district court granted the two successful teachers declaratory and injunctive relief. The district court also assessed a portion of costs and fees against the School District. *Missouri Nat'l Educ. Ass'n. v. New Madrid County R-1 Enlarged School District*, 606 F.Supp. 25 (E.D.Mo.1984). On appeal, the Eighth Circuit affirmed the district court's grant of relief to the two successful teachers but remanded the case for a new trial on all other issues. *Missouri Nat'l Educ. Ass'n. v. New Madrid County R-1 Enlarged School District*, 810 F.2d 164 (8th Cir. 1987).

Following that decision, the School District settled the case with the teachers for

---

* The HONORABLE EDWARD DUMBAULD, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

$268,373.51: $198,373.51 for costs and attorneys' fees, and $70,000 as a compromise settlement of all remaining claims.

In response to the School District's requests for payment of its expenses in litigating the teachers' suit, Continental Casualty maintained that the School District had not suffered a loss covered by its policy. The School District then commenced this suit in Missouri state court, seeking reimbursement for the costs and settlement of the teachers' suit, damages for vexatious refusal to pay, and attorneys' fees for this action. Continental Casualty subsequently removed the case to federal district court.

After considering the case based on the parties' joint stipulations of fact and stipulated exhibits, the district court found that the School District was entitled to recover the settlement paid to the teachers in the § 1983 suit. Further, the district court ruled that the School District did not prove vexatious refusal. Finally, the court awarded the School District attorneys' fees for this action. Continental Casualty moved the district court for a new trial or, in the alternative, to alter or amend the judgment. The court denied that motion. *732 F.Supp. 1004.*

Continental Casualty now appeals, and the School District cross-appeals the district court's denial of damages for vexatious refusal to pay.

## II. DISCUSSION

### A. Coverage Under the Liability Policy

Continental Casualty argues in this appeal that the teachers' § 1983 suit against the School District is not covered by the policy for three reasons: (1) the School District's actions against the teachers were not "wrongful acts" within the meaning of the policy's insuring clause; (2) the teachers' action was excluded from the policy's coverage by a provision excluding claims based on contractual obligations; and (3) public policy in Missouri forbids insurance coverage for an insured's intentional wrongful acts. We address each argument in turn.

### 1. "Wrongful Act"

Continental Casualty argues that the School District's insurance policy is essentially an "errors and omissions" policy which covers only negligent breaches of duty and not intentional misconduct. It cites cases involving other "errors and omissions" policies where no coverage was found and argues that the insurance policy involved here is similar and requires a like finding. We have examined those cases and disagree. The policies involved in the cases Continental Casualty relies upon contained language that suggested, if not explicitly provided, that the policy was intended only to cover damages caused by accident and not by intentional misconduct.

For example, in *School Dist. No. 1, Multnomah County v. Mission Ins. Co.,* 58 Or.App. 692, 650 P.2d 929 (1982), the court was asked to determine whether a liability insurance policy covered the insured school district for claims against it for discrimination. The policy provided coverage for amounts the insured became liable for on account of claims for " 'breach of duty made against the insured by reason of any negligent act, error or omission....' " *Id.* at 695, 650 P.2d at 932. In addition, the policy specifically excluded coverage for " 'any dishonest, fraudulent, criminal or malicious act.' " *Id.* at 697, 650 P.2d at 934. The court examined the definitions of the terms "negligence," "error," and "omission," and concluded that each term suggested events of an accidental, unintended nature. *Id.* at 697, 650 P.2d at 934. The court thus held that the policy did not cover the insured's commission of intentional discrimination. *Id.* at 698–99, 650 P.2d at 935–36.

Continental Casualty submits that the policy involved in *Mission Ins. Co.* was "almost identical" to the policy involved here. We do not think that an insuring clause that covers an insured's "negligent acts, errors and omissions" is almost identical to one that covers an insured's "wrongful acts." The term "wrongful acts" can fairly be read to encompass more affirmative, willful behavior than can the phrase "negligent acts, errors, and omissions."

We are similarly unpersuaded by Continental Casualty's reliance on *St. Paul Fire & Marine Ins. Co. v. Campbell County School Dist. No. 1*, 612 F.Supp. 285 (D.Wyo.1985). There, an insured school district sought coverage under a liability policy when it was sued for violating a teacher's First Amendment rights. Three liability insurance policies were involved. The first covered " 'bodily injury' " inflicted by the insured " 'caused by an occurrence,' " and defined "occurrence" as " 'an accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.' " *Id.* at 287. The second policy covered damages inflicted by the insured " 'because of bodily injury by accident or disease....' " *Id.* at 288. The third policy was a workers' compensation-type policy that was held inapplicable because the injured party chose to sue rather than recover under the Voluntary Compensation Endorsement of the policy. *Id.*

The court concluded that the plain language of the policies clearly excluded coverage for intentional acts and went on to analyze whether or not the insured's acts against the teacher were intentional. Again, Continental Casualty argues that the policy in *St. Paul* is similar to the policy involved in the instant case. Yet, a simple comparison of the policies' language shows otherwise. The policy in *St. Paul* quite clearly indicated that the parties did not intend that intentional acts would be covered. The policy involved in this case, however, does not lead to a similar conclusion.

We next turn to *Angelina Casualty Co. v. Pattonville–Bridgeton Terrace Fire Protection Dist.*, 706 S.W.2d 483 (Mo.App. 1986), the only Missouri case relied on by Continental Casualty for this argument. The policy in that case contained language identical to that in *St. Paul.* It covered damage caused by an "occurrence," and defined that term as " 'an accident ... neither expected nor intended from the standpoint of the insured,' " and excluded coverage for the insured's intentional acts. *Id.* at 484. Again, the policy's insuring clause

in *Angelina* is significantly different from the insuring clause involved here.

In short, Continental Casualty's claim that its "errors and omissions" policy was not intended to cover intentional acts is supported only by distinguishable cases. Here, we simply do not have a policy that on its face indicates that only negligent breaches were covered. The insuring clause extends coverage to "wrongful acts" and nothing in the policy's definition of that term or its list of exclusions suggests that intentional wrongdoing was not meant to be covered.

The district court held that the "wrongful act" language in the policy was not ambiguous. It then relied on the well-settled rule in Missouri that insurance policies are contracts to which the rules of contract construction apply, and such rules require that plain and unambiguous language be afforded its plain meaning. *Central Surety & Ins. Corp. v. New Amsterdam Casualty Co.*, 359 Mo. 430, 432, 222 S.W.2d 76, 78 (1949) (en banc); *Moore v. Commercial Union Ins. Co.*, 754 S.W.2d 16, 18 (Mo.App. 1988); *U.S. Fire Ins. Co. v. Coleman*, 754 S.W.2d 941, 944 (Mo.App.1988). Based on those principles, the district court concluded that the policy's "wrongful act" language covered the School District's liability in a civil rights suit.

We tend to agree with the district court that the language at issue unambiguously provides coverage for the teachers' § 1983 suit. Even if we considered the language to be ambiguous in that, for example, it is quite general, we would still conclude that there is coverage because under Missouri law it is well established that ambiguities in insurance contracts are construed in favor of the insured. *Shelter Mutual Ins. Co. v. Brooks*, 693 S.W.2d 810, 812 (Mo. banc 1985); *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 698 (Mo. banc 1982); *Nixon v. Life Investors Ins. Co. of America*, 675 S.W.2d 676, 679 (Mo.App. 1984).

If Continental Casualty wanted to exclude this type of liability from its policy it could and should have done so explicitly. Absent an explicit exclusion, we must apply

the language as written. We hold that this insurance policy's coverage for "wrongful act" extends to the School District's wrongful actions against the teachers.

## 2. Exclusion for Contractual Obligations

██ Continental Casualty next argues that the teachers' action against the School District is excluded under paragraph IV(b)(6) of the policy, which excludes coverage for "any amounts due, under the terms of any contractual obligation...." Appendix at 78. Continental Casualty submits that the teachers' action against the School District essentially sought to redress the School District's breach of its employment relationship with the teachers in that they complained of wrongful termination and transfers and sought such remedies as back wages and other contractual benefits.

We reject this argument. It is clear that the teachers' suit sought to redress violations of constitutional rights and, even though some of the remedies sought resembled contract-type remedies, the suit simply cannot fairly be characterized as a suit for breach of contract. Any suit between teachers and their school district will to some extent involve complaints or remedies that emanate from the parties' contract. That does not mean, however, that all such suits are breach of contract suits. We note that the teachers' action was brought in federal court pursuant to 42 U.S.C. § 1983 because of the First Amendment issues involved. Had the suit been based only on breach of contract it would have involved purely state law questions and would not have been cognizable in federal court, absent diversity.

We hold that the teachers' suit against the School District was a suit to vindicate constitutional rights and was not excluded by paragraph IV(b)(6) of the policy.

## 3. Exclusion for Uninsurable Matters

██ Continental Casualty next argues that coverage for the School District's liability to the teachers is excluded by paragraph III(d) of the policy, which provides in pertinent part that "loss shall not include ... matters which shall be deemed uninsur-

able under the law pursuant to which this policy shall be construed." Appendix at 75–76. Continental Casualty claims that as a matter of public policy under Missouri law insurance contracts cannot be interpreted to afford coverage for an insured's intentional acts. For that proposition the only Missouri authority upon which Continental Casualty relies is *White v. Smith*, 440 S.W.2d 497 (Mo.App.1969).

In *White*, the insured in a general liability insurance policy sought coverage from its insurer for a $6,000 verdict rendered against it in an action for nuisance. The insurance policy covered all sums which the insured became legally obligated to pay resulting from property damage caused by accident. The insurer argued that the insured's damages were not "caused by accident" as required by the policy because the insured's acts in causing the nuisance were intentional. The Missouri Court of Appeals rejected that argument, reasoning that even though the insured's acts in causing the nuisance were intentional, the damage resulting from those acts was not intended. *Id.* at 507–08. Thus, the court concluded, the insured's damages were caused by accident and were recoverable from the insurer. *Id.* at 512.

In so holding, the Missouri Court of Appeals stated: "It is true that, as a matter of public policy, a liability insurance contract does not afford coverage for damage intentionally inflicted by the insured, that is, for damage resulting from acts consciously and deliberately done by the insured, 'knowing that they were wrong, and intending that harm result from said acts.'" *Id.* at 507 (footnote and citation omitted) (quoting *Crull v. Gleb*, 382 S.W.2d 17, 21 (Mo.App.1964)). Continental Casualty relies on this language for the proposition that in Missouri liability insurance contracts cannot be interpreted to provide coverage for the insured's intentional acts.

We are not persuaded. The *White* court's above-quoted statement is not part of that court's actual holding and thus is dictum. The court's statement that pursuant to public policy liability insurance policies cannot cover intentional acts was not

made in response to a dispute before it involving those facts. The court was not construing a policy that, like the one involved here, purported to cover intentional acts. It was interpreting an insurance policy that expressly provided that the insured's damages had to be caused by accident in order to be covered. The court was called upon to decide only whether particular damage was caused by accident or intentional acts. It is clear that its broad statement about Missouri's public policy is dictum, and thus we do not view it as conclusive authority regarding the state of Missouri law. *See State v. Miles Laboratories, Inc.*, 365 Mo. 350, 359, 282 S.W.2d 564, 573 (1955) (en banc) (footnote and citation omitted) (stating that "[a]ny reported opinion should be read in the light of the facts of that particular case, and it would be unfair as well as improper 'to give permanent and controlling effect to casual statements outside the scope of the real inquiry'" (quoting *Rauch v. Metz*, 212 S.W. 353, 357 (Mo.1919) (en banc)); *Cook v. Pedigo*, 714 S.W.2d 949, 951 (Mo.App.1986) (same); *Saveway Oil Co. v. Sears, Roebuck and Co.*, 560 S.W.2d 325, 328 (Mo. App.1977) (same).

The Missouri Court of Appeals made the same statement in dictum in *Fidelity and Casualty Co. of New York v. Wrather*, 652 S.W.2d 245, 249 (Mo.App.1983), a case factually similar to *White*. *See also Crull v. Gleb*, 382 S.W.2d 17, 23 (Mo.App.1964) (holding that liability insurance policy that expressly excluded coverage for the insured's intentional acts did not cover punitive damages award assessed against the insured and stating in dictum that public policy forbids insurance coverage for punitive damages). And, the Missouri Court of Appeals reiterated a similar statement in dictum in *Keeler v. Farmers and Merchants Ins. Co.*, 724 S.W.2d 307, 309 (Mo. App.1987), which involved an insured who sought coverage under her policy's uninsured motorist provision for personal injuries sustained by her as a result of an uninsured third party's intentional act. However, neither these cases nor *White* involved the problem presented by the instant case: whether Missouri public policy

prohibits insurance coverage for an insured's intentional acts where the policy provides for such coverage.

A Missouri case that did address an issue similar to that presented here is *Colson v. Lloyd's of London*, 435 S.W.2d 42 (Mo. App.1968). In that case, the insured, a deputy sheriff, sought coverage under a liability insurance policy for a civil judgment rendered against him for false arrest. The insured had been found liable for $5,000 in actual damages and $2,500 in punitive damages. The insurance policy explicitly covered damages sustained by the insured as a result of committing a false arrest and contained no exclusion for intentional acts. The court noted that the insurer "fully intended to cover its insureds who committed wilful, intentional and malicious acts in their capacity as law enforcement officers." *Id.* at 47.

The insurer in *Colson* argued that it would be a violation of public policy to allow one to insure himself against his own intentional, unlawful acts. The Missouri court concluded that such a result would not be against public policy and allowed the insurance policy to cover the insured's actual and punitive damages for committing false arrest. *Id.*

The *Colson* holding, as well as the absence of authority supporting Continental Casualty's position about Missouri public policy, leads us to conclude that the Missouri courts would not prohibit coverage in this case. We have not been presented with case law from Missouri indicating that Missouri would, on the basis of public policy, prohibit insurance coverage for civil rights violations. In addition, in attempting to anticipate what the Missouri Supreme Court would hold on this issue we must afford deference to the district court's interpretation of Missouri law. *See Economy Fire & Cas. Co. v. Tri–State Ins. Co. of Minn.*, 827 F.2d 373, 375 (8th Cir. 1987).

Accordingly, we hold that the insurance policy as applied in this case does not violate the public policy of Missouri. We enforce this contract as written. We affirm the district court's holding that the settle-

ment paid by the School District to the teachers is a covered "wrongful act" under the policy, and neither the policy's exclusions nor Missouri public policy defeats that coverage.

## B. Attorneys' Fees

 Continental Casualty also appeals the district court's award of attorneys' fees to the School District incurred in litigating the instant case. On this issue we disagree with the district court. As a general rule in Missouri, attorneys' fees are recoverable only when called for by contract or provided by statute. *County Court of Washington County v. Murphy*, 658 S.W.2d 14, 16 (Mo. banc 1983); *Harold S. Schwartz & Assoc., Inc. v. Continental Casualty Co.*, 705 S.W.2d 494, 498 (Mo.App.1985).

The district court held that paragraph VI of the insurance policy provides for payment of fees by the insurer. That paragraph provides: "The ... School District shall select and retain legal counsel to represent them in the defense and appeal of any claim, suit, action or proceeding covered under this policy, but no fees, costs or expenses shall be incurred or settlements made, without the Insurer's consent, such consent not to be unreasonably withheld." Appendix at 78. The district court held that the instant action is "derivative" of the underlying suit between the School District and the teachers and is thus covered by paragraph VI.

We do not believe that the above-quoted portion of paragraph VI can fairly be read to require the insurer to pay the insured's attorneys' fees in an action by the insured seeking coverage. That language provides only that the insured is expected to retain its own legal counsel to handle claims covered by the policy. It does not itself provide coverage for attorneys' fees. The district court's ruling that paragraph VI warrants the assessment of fees against the insurer is incorrect.

The School District has not identified a contractual or statutory provision that warrants deviation from the rule that parties in litigation generally bear their own attorneys' fees. The district court's award of fees to the School District is thus reversed.

## C. Vexatious Refusal to Pay

 In its cross-appeal, the School District maintains that the district court erred in ruling that it failed to prove that Continental Casualty's refusal to pay was vexatious. In Missouri, damages for an insurance company's vexatious refusal to pay are governed by statute. Missouri Revised Statute § 375.420 provides that if an insurance company's refusal to provide coverage "is without reasonable cause or excuse, the court or jury may ... allow the plaintiff damages [in a specified amount] and a reasonable attorney's fee." Mo.Rev.Stat. § 375.420 (1986). To show vexatious refusal under this statute, a "plaintiff must show that the insurer's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person." *DeWitt v. American Family Mutual Ins. Co.*, 667 S.W.2d 700, 710 (Mo. banc 1984) (citation omitted). *See also Storhaug v. State Farm Fire & Casualty Co.*, 747 F.2d 443, 444 (8th Cir.1984). Further, the finder of fact should make this determination according to the facts as they appeared at the time of the refusal to pay. *Katz Drug Co. v. Commercial Standard Ins. Co.*, 647 S.W.2d 831, 839 (Mo.App.1983).

We agree completely with the district court that the School District has not shown that Continental Casualty's refusal to pay was willful and without reasonable cause. It is clear that Continental Casualty entertained an honest difference of opinion as to the policy's coverage. Although its position ultimately was rejected, that position was by no means frivolous or unreasonable. We also note that the insurance policy had no duty-to-defend provision; thus, Continental Casualty had the right to withhold payment until the School District became legally obligated to pay after suffering a covered loss.

In short, the School District has not shown that the district court's ruling in this regard is clearly erroneous as a factual finding or improper as an interpretation of

**1244**

law, and the district court's judgment is thus affirmed.

## III. CONCLUSION

We affirm the district court's holding that Continental Casualty is obligated under the policy to reimburse the School District for the settlement it paid to the teachers. We also affirm the court's holding that the School District is not entitled to damages for vexatious refusal to pay. Finally, we reverse the district court's award of attorneys' fees to the School District.