**MISSOURI PUBLIC ENTITY
RISK MANAGEMENT
FUND, Plaintiff,**

v.

**INVESTORS INSURANCE COMPANY
OF AMERICA, Defendant.**

No. 03–4153–CV–C–NKL.

United States District Court,
W.D. Missouri,
Central Division.

Sept. 23, 2004.

Michael G. Berry, Hendren & Andrae, L.L.C., Jefferson City, MO, for Plaintiff.

Larry E. Hepler, Michael L. Young, Theodore J. MacDonald, Burroughs, Hepler, Broom, MacDonald, Hebrank & True, LLP, Edwardsville, IL, for Defendant.

## ORDER

LAUGHREY, District Judge.

Pending before the Court is Plaintiff Missouri Public Entity Risk Management Fund's ("MOPERM") Motion for Partial Summary Judgment [Doc. # 32] and Investors Insurance Company of America's ("Investors") Motion for Summary Judgment [Doc. # 34]. For the reasons set forth below, the Court grants MOPERM's Motion and denies Investors' Motion.

### I. Factual Background

MOPERM is a statutorily-created corporation that provides insurance coverage for public entities and their employees. MOPERM contracted with Investors to obtain an excess insurance policy. Under the excess insurance policy, Investors agreed to insure claims against MOPERM where the damages exceeded $900,000 for a single incident or $6 million for the annual aggregate of all claims. Thus, if MOPERM's liability exceeded these threshold amounts, Investors agreed to pay the excess damages.

Investors' excess insurance policy requires Investors to "pay those sums that the Insured becomes legally obligated to pay as damages because of a 'Wrongful Act' to which this coverage applies." (Pl. Mot. Summ. J., App. A (hereinafter "App. A"), p. 73.) Wrongful Act is defined as "any alleged or actual act, error or omission, or breach of duty, or violation of any federal, state, or local civil rights by an insured while acting within the scope of his/her duties . . . ." (App.A, p. 78.) The policy defines an insured as: "Member Agencies of MOPERM and any elected or appointed official of the Member Agency, [or] any employee . . . of the Member Agency all while acting within the course and scope of his duties." (App.A, p. 73.)

In 1997, Investors' excess insurance policy was modified at the request of MOPERM to include Endorsement 19. In that endorsement, Investors agreed to provide coverage for claims involving "discrimination prohibited by law." (App.A, p. 11.)

Because Investors' policy is an excess coverage policy, it only covers claims that are covered by MOPERM's policy. MOPERM's policy covers, among other things, personal injury liability, which includes "(f) discrimination prohibited by law or violation of federal civil rights law." (App.A, p. 41.)

The parties do not dispute the underlying facts about this case. However, they dispute whether Investors' excess insurance policy provides coverage for the four claims outlined below.

### A. Laverne Belk

Laverne Belk ("Belk") sued the City of Eldon, Missouri ("Eldon"), and its four aldermen. Belk alleged the aldermen retaliated against her by discharging her for publicly criticizing Eldon's city administrator. She also alleged gender discrimination in that the aldermen discharged her but gave the city administrator several weeks' notice that his contract would not be renewed. Belk's complaint alleged violations of 42 U.S.C. § 1983, Title VII, and the MHRA, based on gender and First Amendment retaliation. After a trial, a jury awarded damages to Belk only on her First Amendment retaliatory discharge claim.

### B. Gail Rucker

Gail Rucker ("Rucker") filed suit against the Junior College District of Saint Louis,

Missouri ("College District"), wherein she alleged that her employer, the College District, retaliated against her when she reported that the organization's president sexually harassed her. Rucker's complaint alleged the College District violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the Fifth and Fourteenth Amendments of the United States Constitution. MOPERM settled with Rucker before trial.

### C.  DeClue–Schejbal

Like Rucker, DeClue–Schejbal sued the College District and alleged the organization's president retaliated against her after she complained about a co-worker. DeClue–Schejbal alleged the retaliation was racially motivated because the president and the co-worker were the same race. DeClue–Schejbal's complaint alleged the College District violated 42 U.S.C. § 1981, Title VII, the Missouri Human Rights Act ("MHRA"), and the First Amendment of the United States Constitution. MOPERM settled with DeClue–Schejbal before trial.

### D.  Darlene Hellerich

Darlene Hellerich ("Hellerich") filed suit in state court against Jerome Biggs ("Biggs"), the prosecuting attorney for Andrew County, Missouri, alleging that he sexually harassed her while she was employed as his assistant. Hellerich's two-count complaint alleged intentional and negligent infliction of emotional distress. MOPERM settled with Hellerich before trial.

In addition to her state claims against Biggs, Hellerich filed administrative charges of gender discrimination with the

Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR") against Andrew County arising out of her employment with Biggs. Hellerich dismissed her administrative charges against Andrew County as a condition of her settlement with Andrew County. That settlement provides that the cost of the mediator selected by the parties will be paid by Biggs and Andrew County.

### II.  Discussion

This Court's subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). When courts exercise diversity jurisdiction, they apply substantive state law. *Am. Home Assurance Co. v. Pope*, 360 F.3d 848, 851 (8th Cir.2004). Therefore, the Court will look to Missouri law to guide its interpretation of MOPERM's and Investors' insurance policies.[1]

Under Missouri law, courts must give effect to the plain meaning in insurance contracts. *Trans World Airlines, Inc. v. Associated Aviation Underwriters*, 58 S.W.3d 609, 622 (Mo.Ct.App.2001). In determining the plain meaning of the language, courts construe the words in accordance with "what a reasonable layperson in the position of the insured would have thought they meant." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri*, 992 S.W.2d 308, 316 (Mo.Ct.App. 1999). If the language is ambiguous, then courts construe the ambiguous language in favor of the insured. *Heringer v. Am. Family Mut. Ins. Co.*, 140 S.W.3d 100, 103 (Mo.Ct.App.2004); *Liberty Mut. Ins. Co. v. Havner*, 103 S.W.3d 829, 832 (Mo.Ct.App.

---

1. The Court must interpret both insurance policies even though this litigation is only about coverage provided by Investors' excess insurance policy. By its terms, the excess insurance policy only covers claims that were covered by MOPERM's policy with its member agencies. Investors has argued that some claims paid by MOPERM were not covered by MOPERM'S policy.

2003). A term is ambiguous if it is susceptible to two or more interpretations because it is duplicitous, indistinct, or uncertain. *Ware v. Geico General Ins. Co.*, 84 S.W.3d 99, 102 (Mo.Ct.App.2002). Missouri adopts this interpretation policy which favors the insured because insurance is designed to furnish protection instead of defeating it. *Id.*

■ Of particular importance in this case is the Missouri law concerning concurrent and proximate causes for a loss. If an insured risk and an excluded one constitute concurrent and proximate causes for a loss, a liability insurer is liable so long as the insured can demonstrate that one of the causes is covered by the policy. *Centermark Properties, Inc. v. Home Indemnity Co.*, 897 S.W.2d 98, 101 (Mo.App.1995) (quoting *Braxton v. U.S. Fire Ins. Co.*, 651 S.W.2d 616, 619 (Mo. App.1983)). Thus, if the Court finds that any part of the four claims at issue here were covered by Investors' excess insurance policy and that part was the proximate and concurrent cause of MOPERM's loss, then MOPERM is entitled to coverage.

Investors has multiple and sometimes overlapping reasons why its excess insurance policy does not cover any of the four claims. The Court will address these arguments in the context of each claim.[2]

## A. Belk Claim

### 1. Investors' Motion for Summary Judgment

#### a. Public Policy

■ Investors argues that MOPERM's claim based on the Belk litigation should be rejected because Missouri public policy prohibits insurance coverage for intentional acts. Under Investors' theory, an employer cannot insure itself against intentional discrimination in its workplace, but can insure itself against unintentional discrimination. Such unintentional discrimination would include disparate impact cases and cases where an employer is held vicariously liable for the intentional wrongdoing of its employees. According to Investors, because the Eldon city aldermen intentionally discriminated against Belk, public policy prevents insurance coverage for their acts.

In response, MOPERM points to a Missouri case that authorized policemen to insure themselves against claims for punitive damages in police brutality cases. *Colson v. Lloyd's of London*, 435 S.W.2d 42, 47 (Mo.App.1968). The *Colson* court concluded that Missouri's policy against insuring intentional conduct would discourage public service and potentially expose public entities to financial devastation. The Missouri Court of Appeals concluded that these competing public policies were best resolved by permitting coverage for police brutality claims.

The court's rationale in *Colson* is equally applicable to this case, even though the respective insurance policies cover different situations. The court in *Colson* noted that virtually all police brutality cases involve allegations of intentional conduct and a claim for punitive damages. *Id.* at 47. Similarly, almost all employment discrimination cases, including those against public entities, involve some allegation of intentional misconduct. By adopting Investors' argument, the Court would effectively limit employment practices insurance to disparate impact cases, which are very rare, and cases arising from vicarious liability. Such a limitation, however, would ignore the reality of employment litigation. Whether an action is motivated by unlawful discrimination is difficult to determine and differ-

---

**2.** The Court has not discussed all arguments raised by Investors because resolution of some of its arguments renders other arguments moot.

ent judges and juries may arrive at different conclusions even when faced with the same facts. In practice then, an employment practices policy insures against the risk that a jury or judge will find intentional discrimination. In contrast, Missouri's rule against insuring intentional conduct arose in the context of insuring someone's life and then killing them or insuring against your own theft or arson. These are all easily identified physical wrongs which are temporally circumscribed. Applying the same rule to employment discrimination cases, although facially appealing at first glance, does not withstand scrutiny.

For similar reasons, the Court rejects Investors' argument that the Belk claim is not covered because *Colson* only permits coverage for intentional conduct which is inherent in an employee's work, such as force exercised by a police officer. The weakness in Investors' argument is that employment discrimination cases generally arise because someone was fired, disciplined, demoted, not promoted or not hired. They also arise when an employee is managed in a way that offends the employee. All these tasks are inherent in the work of any employer. While discrimination is not required, difficult employment choices are. Similarly, police brutality is not required, just difficult judgment calls about how much force to apply. *Colson* recognizes that in some cases, the line between liability and nonliability is so diffuse that insurance coverage should be permitted. Furthermore, *Colson* does not suggest that the coverage decision should be made on a case by case basis; i.e., covering only some kinds of police brutality depending on how far the officer has stepped over the line. Such a case by case approach would prevent predictability, an important public policy value, particularly in the context of insurance coverage.

■ Finally, even if public policy precludes insurance coverage under these circumstances for private employers, Investors' argument is geometrically less persuasive where the party seeking to insure itself is a public entity. Under Missouri law, public entities enjoy sovereign immunity, even where the cause of action against the entity is pleaded as an intentional tort. *Mitchell v. Village of Edmundson,* 891 S.W.2d 848, 850 (Mo.Ct. App.1995) (conversion); *Conrod v. Missouri State Highway Patrol,* 810 S.W.2d 614, 617 (Mo.Ct.App.1991) (conversion); *Duncan v. Creve Coeur Fire Protection Dist.,* 802 S.W.2d 205, 207 (Mo.App.1991) (intentional infliction of emotional distress and retaliatory discharge). Hence, Missouri has already concluded that public entities should have special protection even when intentional torts are alleged. Furthermore, if public officials are exposed to personal liability for intentional discrimination, the pool of applicants would be substantially diminished, and this also is against public policy. Furthermore, to the extent a public entity must pay damages for intentional discrimination, it is taxpayers who ultimately bear the financial burden, and they did not engage in wrongdoing. While Investors points out that taxpayers can correct future problems by voting out of office the officials responsible, this does not prevent the economic loss to the public entity that has already occurred. Only insurance can protect the innocent taxpayer.

Given the nature of employment litigation, the Court concludes that it is not against public policy to enforce insurance contracts which cover intentional acts of discrimination.

**2. Definition of "Discrimination Prohibited by Law"**

■ Investors also moves for summary judgment on Belk's claim because the jury

found in favor of Belk only on her First Amendment retaliation claim and, according to Investors, that is not a "discrimination" claim as that term is used in Endorsement 19. Investors argues that if the Court holds that retaliation is tantamount to discrimination, then any claim by a terminated employee would be covered by the excess insurance policy because most terminations, by their very nature, are in retaliation for an employee's conduct.

The Court finds Investors' argument unpersuasive. Discrimination and retaliation are, in effect, premised on the same concept and should be treated accordingly under Endorsement 19. In both instances, the employee is not being evaluated on his merits, but instead his race, gender, religion or protected conduct. This view is also supported by the language in the section of Title VII which prohibits retaliation. That section does not actually use the word "retaliation" but instead uses the word "discrimination" to describe the conduct prohibited; i.e., retaliation against employees who participate in protected activity. *See* 42 U.S.C. § 2000e–3(a) (2000).

The cases also treat First Amendment discrimination and retaliation as interchangeable concepts. A representative sample of cases using the word "discrimination" to describe a First Amendment "retaliation" claim follows. See *Wilson v. Garcia*, 471 U.S. 261, 273, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) ("constitutional claims that have been alleged un § 1983 would encompass ... discrimination in public employment on the basis of ... the exercise of First Amendment rights"), *superseded by statute on other grounds*, 28 U.S.C. § 1658(a); *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 66, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (plaintiffs alleged "they had suffered discrimination with respect to state employment because they had not been supporters of the State's Republican Party and that this discrimination violates the First Amendment."); *Ingram v. Johnson*, 187 F.3d 877, 880 (8th Cir.1999) (wherein the Court described such a cause of action as "First Amendment retaliation discrimination"); *Gumbhir v. Curators of University of Missouri*, 157 F.3d 1141, 1144 (8th Cir.1998) ("A claim of retaliation discrimination requires proof that the employee engaged in protected activity ...."); *Floyd v. State of Missouri Dep't of Social Services*, 188 F.3d 932, 939 (8th Cir.1999) ("Floyd argues that the district court erred by denying her leave to amend her complaint to include a charge of discrimination based on her First Amendment right to free association."); *Graning v. Sherburne County*, 172 F.3d 611, 615 (8th Cir.1999) (using the word "discrimination" to describe plaintiff's claim that she was fired for supporting the wrong political candidate).

Finally, the Court also rejects Investors' argument that equating retaliation with discrimination will bring every employment termination within the purview of Endorsement 19. Endorsement 19 only covers discrimination "prohibited by law." Thus, Endorsement 19 clearly does not cover an employee who is fired because he stole or was lazy. "Retaliating" against someone who steals or is lazy is not prohibited by law. Belk's retaliation claim involved conduct prohibited by law and, therefore, is unlike the generalized discrimination or retaliation claims posited in Investors' brief.

### 3. MOPERM's Motion for Summary Judgment

MOPERM also moves for summary judgment on Belk's claim. Based on the foregoing discussion, the Court holds Endorsement 19 covers Belk's claim, and coverage is not precluded by public policy. MOPERM's Motion for Summary Judg-

ment as it relates to the Belk claim is granted.

### B. Rucker Claim

#### 1. Investors' Motion for Summary Judgment

■ Investors moves for summary judgment on Rucker's claim alleging that Missouri public policy prohibits insurance coverage for wrongful conduct which is authorized, ratified, or condoned by the insured. Rucker's suit against the College District was based on the conduct of the organization's president and Investors asserts that the president, by virtue of his position in the College District, acted as the College District and ratified his own misconduct. Because the Court has determined that it is not against public policy to provide insurance coverage for intentional acts of discrimination, Investors' ratification arguments are superfluous. However, the Court will briefly address the issue.[3]

First, common sense dictates that the college president cannot be both the bad actor and the employee that ratifies his own conduct, otherwise employment practices insurance would never cover an entity when a senior official commits the wrongful act, leaving exposure at the most damaging level. Second, and most important, Investors has presented no evidence that the president in fact ratified his own wrongful conduct on behalf of the College District. Ratification contemplates an affirmative act condoning or approving of wrongful conduct. This is the only reason that it is appropriate to impute one persons wrongful conduct to another. Merely committing a wrong in ones personal capacity does not mean the president consciously decided to ratify his conduct on behalf of the College District. Further-

more, Investors has not shown that the College District's governing body condoned the president's conduct or gave the president actual or apparent authority to ratify or condone, on behalf of the College District, discriminatory conduct by anyone. Job title alone is not enough to demonstrate that ratification has occurred or was authorized.

#### 2. MOPERM's Motion for Summary Judgment

MOPERM also moves for summary judgment on Rucker's claim. Rucker alleged the College District violated Title VII and the Fifth and Fourteenth Amendments of the United States Constitution. The parties do not dispute that Endorsement 19 covers these claims because they involve "discrimination prohibited by law." Because MOPERM has established as a matter of law that there is coverage, the Court grants MOPERM's Motion with respect to Rucker's claim.

### C. DeClue–Schejbal Claim

#### 1. Investors' Motion for Summary Judgment

DeClue–Schejbal brought her claims against the same defendant as Rucker and alleged the college president also committed wrongful conduct against her. Investors moves for summary judgment based on its ratification theory previously discussed in the Rucker claim. For the reasons already set forth, the Court denies Investors' Motion with respect to DeClue–Schejbal's claim.

#### 2. MOPERM's Motion for Summary Judgment

MOPERM also moved for summary judgment on DeClue–Schejbal's claim. In

---

**3.** This ratification discussion is also applicable to the Belk claim. Investors argued that the city of Eldon should not be covered be-

cause the city aldermen, acting on behalf of the city of Eldon, ratified their own misconduct.

her complaint, DeClue–Schejbal alleged the College District violated 42 U.S.C. § 1981 and Title VII The parties do not dispute that Endorsement 19 covers these claims because they involve alleged "discrimination prohibited by law." Therefore, the Court grants MOPERM's Motion regarding DeClue–Schejbal's claim.

### D. Hellerich Claim

#### 1. Investors' Motion for Summary Judgment

Investors has several grounds for opposing coverage for the Hellerich claim. Many of them relate to Hellerich's lawsuit against Biggs, the Andrew County prosecuting attorney. However, Hellerich settled her dispute with Andrews County at the same time she settled her dispute with Biggs; therefore, resolution of coverage issues involving the Andrew County settlement will make it unnecessary to discuss Investors' argument about Biggs. Such a discussion is unnecessary because the claim against Biggs and Andrew County are the proximate and concurrent cause of MOPERM's loss occasioned by the settlement of Hellerich's sexual harassment allegations. This is because the administrative charges against Andrew County and the state law claims against Biggs all arise out of the same nucleus of operative facts, Hellerich's employment as Biggs's assistant. The facts which support Hellerich's administrative charges are the same as the facts which support her lawsuit against Biggs. While Hellerich may have raised common law legal theories in state court and statutory legal theories in her administrative charge, the conduct alleged to form the basis for all her legal theories is sex harassment.

Investors has raised three reasons why Hellerich's settlement with Andrew County should not be covered by its excess insurance policy with MOPERM. First, Investors argues that evidence of Hellerich's administrative charge against Andrew County should be stricken because MOPERM did not appropriately plead the administrative charge as a basis for Hellerich's claim, did not disclose the administrative charge during discovery, and did not present evidence of the administrative charge until its reply to Investors' Opposition to MOPERM's Motion for Partial Summary Judgment and its response to Investors' Motion for Summary Judgment.

Second, MOPERM's policy excludes coverage for any claims seeking relief "other than money damages." (App.A, p. 39.) An EEOC charge does not permit monetary damages. Therefore, according to Investors, MOPERM's policy itself did not cover Hellerich's settlement with Andrew County, and coverage by MOPERM is a condition precedent for coverage by Investors' excess insurance policy.

Third, Investors' excess insurance policy only covers "suits" and no "suit" was ever filed against Andrew County.

#### a. Investors' Motion to Strike

■ Investors is correct that MOPERM did not present evidence of Hellerich's administrative charge against Andrew County in support of its Partial Motion for Summary Judgment. MOPERM first submitted this evidence in response to Investors' Motion for Summary Judgment and in its Reply to Investors' Opposition to MOPERM's Motion for Partial Summary Judgment. Technically, the local rules permit the evidence to be considered in response to Investors' Motion for Summary Judgment but not in support of MOPERM's Partial Motion for Summary Judgment. On the other hand, the purpose of the rule is to ensure that a party opposing summary judgment will be able to respond to all evidence which has been submitted in support of a summary judgment motion.

Because Investors never asked for the opportunity to present evidence concerning the documents, did not contest the authenticity of these documents, and was able to respond to MOPERM's arguments concerning the documents, a mechanical application of the rule is not warranted. Furthermore, from a pragmatic perspective, having an evidentiary trial merely because proof was not presented in the correct order during the summary judgment phase would not produce litigation economy.

As to Investors' argument that MO-PERM never pleaded the administrative charges, federal court is a notice pleading jurisdiction and MOPERM's complaint fairly put Investors on notice that it was seeking coverage for money paid by MO-PERM to Hellerich. Any theory for coverage was, therefore, properly raised by MOPERM's Complaint.

As to Investors' argument about discovery, Investors has presented insufficient evidence to show that it did not receive evidence of the administrative charge prior to the close of discovery. More importantly, it has not shown any real prejudice for not getting evidence of the administrative charge sooner.

For purposes of these cross motions for summary judgment, the record will reflect that Hellerich filed a Title VII administrative charge before the EEOC and an MHRA charge before the Missouri Human Rights Commission. These charges were filed against Andrew County and were in addition to the common law claims raised in state court against Prosecutor Biggs.

**b. Did MOPERM's Policy Provide Coverage for Hellerich's Settlement With Andrew County?**

▆▆ Investors has two substantive grounds for seeking summary judgment based on Andrew County's settlement with Hellerich. First, MOPERM's policy with Andrew County specifically excludes coverage for any claims seeking relief "other than money damages." (App.A, p. 39.) Based on this language, Investors concludes that the administrative charge against Andrew County is not covered by MOPERM's policy because the EEOC is not authorized to award money damages in an administrative action. To resolve this issue, the Court must consider all four corners of the MOPERM policy to determine the intentions of the parties. *Bickerton, Inc. v. American States Ins. Co.*, 898 S.W.2d 595, 601 (Mo.App.1995) (Absent ambiguity, the Court must give effect to the parties' intentions set forth in the four corners of the document).[4] MOPERM's policy provides coverage for personal injury losses imposed by law or assumed by contract. (App.A, p. 36.) Personal injury losses include damages because of "(f) discrimination prohibited by law." (App.A, p. 41.) Because MOPERM's policy covers losses incurred as a result of contract, it clearly contemplates coverage for settled disputes, not just litigated disputes. The Hellerich claim against Bigg and Andrew County was settled for $150,000. This amount is the loss which Andrew County assumed by contract for any injuries Hellerich sustained as a result of discrimination prohibited by law. The loss was not occasioned by injunctive relief. The loss was incurred because the County had to pay money damages to Hellerich in exchange for her agreement to give up all claims she may have against the County. There is nothing in the MOPERM policy that says a suit for money damages must be filed before a settlement can be reached. The plain language and structure of the policy indicates that a settlement for money damages is covered by the

---

4. If there is an ambiguity, the Court must find in favor of the insured, MOPERM.

MOPERM policy even in the absence of suit being filed. Furthermore, it would make no sense for the parties to require the filing of a lawsuit to trigger coverage given the increased cost in cases where lawsuits are filed. It is, therefore, irrelevant whether money damages can be recovered in an EEOC administrative action. MOPERM's policy covers losses sustained as a result of a settlement agreement, even where no suit or administrative charge has been filed.

### c. Does Investors' Excess Insurance Policy Only Cover "Suits"?

■ Investors' second argument is that its excess insurance policy only covers "suits" and an administrative charge is not a "suit." Investors' excess insurance policy, however, obligates Investors to pay "those sums that the insured becomes legally obligated to pay as damages because of wrongful acts to which this coverage applies." (App.A, p. 73.) The policy does not require a suit to be filed before Investors is obligated to pay. It insures against losses incurred because of wrongful acts, not claims for money damages raised in a court of law. In fact, within the same paragraph the policy makes a distinction between a wrongful act, a suit, and a claim. "We will have the right and duty to defend any suit seeking these damages. We may at our discretion investigate any wrongful acts and settle any claim or suit that may result." *Id.* Investors' policy, like MOPERM's policy, contemplates that claims may be asserted without a suit being filed. This also comports with common sense and what a reasonable person would expect the terms of these policies to mean. Therefore, whether an administrative charge is a "suit" is irrelevant, for purposes of indemnification, because Investors' policy insures against losses incurred because of a "wrongful act," not a "suit."

Not only must Investors include in its loss calculation the amount of the Helle-

rich settlement, it must also cover the defense costs incurred by MOPERM to defend the Hellerich dispute. Investors' policy defines a "suit" as a "civil proceeding." It includes arbitration, or any other alternative dispute resolution proceeding to which the parties submit. The settlement agreement between Hellerich and Andrew County indicates that they participated in the mediation of this dispute and necessarily incurred defense costs. Because at least some of the defense costs are attributable to mediation, which are covered under the definition of "suit," summary judgment cannot be granted in favor of Investors on this issue. Also an administrative charge clearly falls within the excess insurance policy's definition of a suit which is "a ,civil proceeding in which damages because of wrongful act(s) to which this coverage applies are alleged." An administrative charge is a civil proceeding, and while money damages cannot be recovered in all EEOC proceedings, damages can be alleged and were alleged; i.e., humiliation and embarrassment.

### 2. MOPERM's Motion for Summary Judgment

MOPERM also moves for summary judgment on Hellerich's claim. Given the Court's ruling on Investors' Motion for Summary Judgment, MOPERM has established that it is entitled to summary judgment on its Hellerich claim. Coverage has been established as a matter of law.

### III. Conclusion

Accordingly, It is hereby

ORDERED that Investors Motion for Summary Judgment is DENIED; and MOPERM's Partial Motion for Summary Judgment, on the issue of coverage for the

Belk, Rucker, Declue–Schejbal and Helle-rich claims, is GRANTED.